Stewart, J.
Lazarus and Farm Bureau assert that the order of the commission approving schedule G-3-U is unlawful and unreasonable; that the commission committed numerous errors, particularly its approval of higher rates for certain customers served from primary-voltage underground lines than the rates for similar customers served from secondary-voltage underground lines; and that it erred in accepting the company’s allocation of the rate-base revenues and expenses as to customers served from primary-voltage underground lines, where the evidence is clear that there are other such customers who are placed in an overhead-primary classification at a lower rate.
At the time of the establishment of the G-3-U rate there were three customers subject to this classification, two of which are the appellants herein. The record discloses that there are three underground cables serving these three customers, one of which serves Lazarus, Farm Bureau, and another customer, the Julian & Kokenge Company, the second of which *227 serves Farm Burean and the Chittenden Hotel, and the third of which serves Lazarus only. These cables are laid in underground conduits, in which are also included feeder lines for the Columbus Transit Company, a subsidiary of the company, and transformer vaults used to serve the Chittenden Hotel and Julian & Kokenge Company, which are purchasers from the secondary lines. There are also seven other underground lines which carry 13,200 volts and serve secondary-voltage customers through transformer vaults. All the underground circuits, except the three applicable to the service of Lazarus, Farm Bureau, and RKO Palace Theater, are assigned to the so-called “overhead” system, since in such instances the final transmission of electricity into the establishments of the consumers is at overhead levels.
The record discloses that such purchasers of primary-voltage electricity as are served by the combination of underground and overhead conduits are on the G-3 rate, which is substantially lower than that paid by the appellants, and in which rate class the company has refused to place Lazarus, Farm Bureau, and RKO Palace Theater.
The allocations of property and expenses made by the company were approved by the commission, with the statement that the errors contained therein did not make a substantial change in the rate.
The underground distributing mains are used to supply electricity at primary and secondary voltages in such a manner that allocations of the value thereof to the different types of service appear to be made only with great difficulty.
In the present case, it is urged by the company that only 10 per cent of the underground conduits in question are used for service to the transit company, and that, therefore, the failure to deduct the value of such *228 service from the property value allocated to the service to appellants is insignificant. The commission accepted this 10 per cent estimate, although the record discloses that this is a mere arbitrary or guess figure, with no evidence to sustain it.
The finding and order of the commission is to the effect that the value of the property devoted to the service of the G--3-U customers is $1,517,200, and that the return on that value would be $61,400, or a return of 4.05 per cent.
The record clearly shows that the valuation figure made applicable to schedule G--3-U includes therein property not solely usable as to these appellants. That is conceded in the finding and order of the commission. There is no analysis by the commission of expenses applicable to schedule G-3-U, although there is clear evidence in the record demonstrating that rates of depreciation on underground installations are lower than overhead, and the cost of maintenance is less. The value of the underground transformer vaults is allocated to the G-3-U schedule, and by such allocation Lazarus, which has an investment of $189,000 in transformers and high-voltage switching equipment, and Farm Bureau, which has invested $90,000 for such equipment, are paying a higher rate than those purchasing power from the company at secondary voltages under schedule G-2, the company furnishing transformers and other equipment to reduce the voltage to 110-220-440 volts. Likewise, the rate established in the present case is higher than that established for all the other consumers of power at primary voltage delivered at from 2,300 to 13,800 volts by means of overhead or underground distributing mains.
Lazarus maintains that the difference between the G-3 and the G-3-U rates in its case is $650 per month, and Farm Bureau maintains that it is paying, under *229 the G-3-U rates, approximately $250 more per month for servme.
The record shows that appellants had no voice in the manner in which their electricity is delivered, and that the company was required to put primary conduits underground in the downtown section of the city of Columbus.
Since only three of the consumers are in G-3-U classification, it must fairly be deduced that all other consumers of electricity at primary voltage are on the G-3 schedule and are paying lower rates.
Although it is vehemently argued and the commission found that “the classification of customers served at primary voltage underground is a proper separate classification for rate-making purposes,” the record contradicts rather than supports such a finding.
Unquestionably there is substantial and unreasonable discrimination against the three customers in the G-3-U classification in favor of other customers receiving the same or similar service.
In the brief of the commission it is contended that the present case is similar to that of Buckeye Lake Chamber of Commerce v. Public Utilities Commission, 161 Ohio St., 306, 119 N. E. (2d), 51. In that case this court approved an order of the commission fixing a telephone rate for subscribers in outlying areas known as “special locality rate areas,” which was higher than a base rate in the municipality in which the telephone exchange was located. Because of the additional telephone equipment necessary for furnishing the service and because of the difference in the expense or difficulty of performing the service required in such areas, this court held that such a difference in rates was not unlawfully discriminatory. In his opinion Judge Hart quoted Section 614-4, General Code, with its prohibition against unlawful discrimination. He *230 stated the general rule to be that “a utility may charge but one rate for a particular service, and any discrimination between customers as to the rate charged for the same service under like conditions is improper; but a utility may, without being guilty of unlawful discrimination, classify its customers on any reasonable basis and make separate rates for each class. ’ ’
In 52 American Jurisprudence, 116, Section 87, it is stated:
“On the other hand, it is well settled that not all discrimination in rates is unjust. In order to constitute an unjust discrimination, there must be a difference in rates under substantially similar conditions as to service, and it is not an undue preference to make to one patron a rate lower than that made to another, where there exist differences in conditions affecting the expense or difficulty of performing the service which fairly justify a difference in rates.”
We are in thorough accord with the statements of law above quoted, but in applying them to the facts in the present case we are of the opinion that the classification of the three consumers under G-3-U is discriminatory against them in favor of at least some of the customers under the G-3 lower rate.
Since it is conceded that the allocation as to appellants of the value of property and expenses connected therewith is partly in error, and there is no breakdown of such allocation from which its effect can be ascertained; since it is error to allocate the value of the transformer vaults to the service of appellants; and since the record plainly shows a substantial and prejudicial discrimination against appellants in favor of customers similarly served; the establishment of classification G-3-U in this instance is unreasonable and unlawful, and the order of the commission is reversed and the cause remanded to it with instructions to mod *231 ify schedule Gr-3-U rates so that they may be no higher than schedule G--3 rates.
In view of the conclusion at which we have arrived, it is unnecessary to discuss additional assignments of error presented by appellants.

Order reversed.

Weygandt, C. J., Middleton, Taet, Hart, Zimmerman and Lamneck, JJ., concur.